UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TRAZZ SAWYER,                                                    REPORT

                                    Plaintiff,                      and

                    v.                                    RECOMMENDATION

NEW YORK STATE DEPARTMENT OF                    11-CV-00152S(F)
CORRECTIONAL SERVICES, BRIAN FISCHER,
Commissioner, Dept. of Corr. Services, MARK
BRADT, former Superintendent of Elmira Corr.
Facility, S.E. RACETTE, Superintendent, Elmira
Corr. Facility, S.J. WENDERLICH, Deputy
Superintendent of Security, RAYMOND COVENY,
Captain, Elmira Corr. Facility, JEFFREY GRAY,
Lieutenant, Elmira Corr. Facility, SGT. MICHAEL
BACKER, Sergeant, Elmira Corr. Facility, TIM
SEWALT, Corr. Officer, Elmira Corr. Facility, D.J.
KNUTH, Corr. Officer, Elmira Corr. Facility,
JASON ELLIOTT, Corr. Officer, Elmira Corr.
Facility, and KAREN BELLAMY, Director,
Inmate Grievance Program,


                                    Defendants.
_____


APPEARANCES:           TRAZZ SAWYER, *Pro Se*
                       97B2413
                       Cayuga Correctional Facility
                       P.O. Box 1186
                       Moravia, New York  13118

                       ERIC T. SCHNEIDERMAN
                       Attorney General, State of New York
                       Attorney for Defendants
                       KATHLEEN M. KAZCOR
                       Assistant Attorney General, of Counsel
                       350 Main Street
                       Suite 300A
                       Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned by Honorable William M. Skretny on October 29, 2014, for all pretrial matters including preparation of a report and recommendation on dispositive motions.  The matter is presently before the court on Defendants' motion to dismiss (Doc. No. 23), filed November 28, 2014.

## BACKGROUND

On February 23, 2011, Plaintiff Trazz Sawyer ("Plaintiff" or "Sawyer"), proceeding *pro se*, commenced this civil rights action pursuant to 42 U.S.C. § 1983, alleging Defendants, employees of New York State Department of Correctional Services ("DOCCS"),[1] at Elmira Correctional Facility ("Elmira" or "the correctional facility"), engaged in conduct resulting in numerous constitutional violations against Plaintiff.  On March 7, 2012 (Doc. No. 8) ("March 7, 2012 Order"), District Judge Michael A. Telesca, *inter alia*, screened the Complaint pursuant to the criteria of 28 U.S.C. §§ 1915(e) and 1915A, dismissing some claims and Defendants, allowing other claims to proceed, and granting Plaintiff until April 12, 2012 to file any amended complaint, which the United States Marshal was directed to serve upon Defendants.

On April 20, 2012, Plaintiff filed the Amended Complaint (Doc. No. 9) ("Amended Complaint"), asserting nine claims for relief, including, as relevant here, Eighth Amendment claims for failure to protect, deliberate indifference and cruel and unusual punishment against former Superintendent of Elmira Mark Bradt ("Bradt"), Amended Complaint ¶¶ 27-30 ("Third Claim"), Lieutenant Jeffery Gray ("Gray"), Amended

---

[1] On April 1, 2011, the New York State Department of Correctional Services and Division of Parole merged into one agency entitled the New York State Department of Corrections and Community Supervision, referred to as "DOCCS."

Complaint ¶¶ 36-38 ("Fifth Claim"), and Correctional Officer Jason Elliott ("Elliott"),

Amended Complaint ¶¶ 64-69 ("Ninth Claim").  Plaintiff's Third Claim also alleges denial

of due process by Defendant Bradt.  Amended Complaint ¶ 30.  On March 13, 2014

(Doc. No. 11) ("March 13, 2014 Order"), Judge Telesca stated "[t]he amended complaint

has been screened by the Court with respect to the 28 U.S.C. §§ 1915(e) and 1915A

criteria."  March 13, 2014 Order at 1.

On August 6, 2014, a motion seeking dismissal of the action (Doc. No. 14) ("First

Motion to Dismiss"), was filed by Defendants Backer, Coveny, Fischer, Knuth, Sewalt,

and Wenderlich.  On November 28, 2014, the instant motion seeking dismissal of the

action (Doc. No. 23) ("Second Motion to Dismiss"), was filed by Defendants Bradt, Gray

and Elliott (together, "Defendants"), supported by the attached Defendants'

Memorandum of Law in Support of Motion to Dismiss (Doc. No. 23-1) ("Defendants'

Memorandum"), and an appendix of unpublished decisions on which Defendants rely

(Doc. No. 23-2) ("Unpublished Decisions Appendix").  On December 18, 2014, Plaintiff

filed Plaintiff's Second Memorandum of Law in Opposition to Defendants Motion to

Dismiss (Doc. No. 25) ("Defendant's Response").

In a Report and Recommendation filed December 23, 2014 (Doc. No. 26)

("December 23, 2014 R&R"), the undersigned recommended the First Motion to Dismiss

be granted.  No objections to the December 23, 2014 R&R were filed and, by text order

entered January 14, 2015, District Judge William M. Skretny adopted the R&R (Doc.

No. 27) ("January 14, 2015 Order "), and the action was dismissed as against

Defendants Backer, Coveny, Fischer, Knuth, Sewalt, and Wenderlich.  On February 20,

2015, Defendants filed Defendants' Memorandum of Law in Further Support of the

Second Motion to Dismiss (Doc. No. 29) ("Defendants' Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Second Motion to Dismiss should be GRANTED in part and DENIED in part.

## FACTS[2]

At all times relevant to this action, Plaintiff Trazz Sawyer ("Plaintiff" or "Sawyer"), was incarcerated at Elmira Correctional Facility ("Elmira" or "the correctional facility"). Plaintiff's claims against Defendants Bradt, Gray, and Elliott arise from an alleged scheme at the correctional facility in which certain unidentified DOCCS employees who worked in the correctional facility's mess hall were stealing boxes of meat from the correctional facility by transferring the food from the correctional facility to a state vehicle, and then to their personal vehicles by which the food was then driven to the thieving employee's homes.   Plaintiff claims the thieving DOCCS employees shared some of the stolen food with other inmates in return for the inmates' cooperation by not reporting the thefts.  Plaintiff claims that after Plaintiff reported the theft to other DOCCS employees, the inmates who had benefited from the alleged thefts made physical threats against Plaintiff, calling plaintiff a "rat" and snitch," which DOCCS employees ignored.  Plaintiff also filed several inmate grievances regarding the alleged threats against him, including a grievance of February 8, 2008 ("February 8, 2008 grievance"), none of which were found to have any merit.

At 11:00 A.M. on February 28, 2008, an unidentified gallery officer opened Plaintiff's cell door despite the fact that Plaintiff was not scheduled to attend any

---

[2] Taken from the pleadings and motion papers filed in this action.

program at that time.  Plaintiff looked out of the open cell door, and was attacked by two unidentified inmates who punched Plaintiff in the face and slashed him several times with a weapon, resulting in two deep cuts to Plaintiff's arm requiring 28 staples to close, as well as a cut to his chest and face ("the assault").  Plaintiff reported the assault to a corrections officer making his rounds, who arranged for Plaintiff to be escorted to the correctional facility's hospital, subsequent to which Plaintiff was placed in the correctional facility's Special Housing Unit ("SHU").  On February 29, 2008, Plaintiff was charged in an Inmate Misbehavior Report ("the Misbehavior Report") with self-harm based on the injuries Plaintiff sustained during the assault.  On March 17, 2008, Plaintiff, following a Tier III Superintendent's Hearing, was found guilty of self-harm and sentenced to six months SHU confinement with loss of personal property and mail. Plaintiff ultimately served only 60 days in SHU during which he maintains he was served food that was tampered with and continued to receive threats, was harassed and was "poked with a needle like object" that caused Plaintiff further stress, *i.e.*, a fear of infection, until he was able to take an HIV/AIDS test several months later.  Amended Complaint ¶ 20.  Plaintiff maintains he although knew "that making such outlandish sounding claims would make him sound not too mentally sound and like a person who would harm himself by cutting," it was clear no correctional officer truly believed Plaintiff was mentally unsound because Plaintiff was never offered mental or psychological care. *Id.*

Plaintiff claims Defendant Bradt, as former Elmira Superintendent, supervised all DOCCS employees at the correctional facility, was aware of each grievance filed, and in receipt of Plaintiff's claim that a physical assault against him by other inmates was

imminent, yet failed to appoint staff to properly investigate Plaintiff's complaints, failed to protect Plaintiff from the threatened assault and was deliberately indifferent to Plaintiff's risk of harm.  According to Plaintiff, despite repeatedly complaining to Bradt, prior to the assault, that a "hit" had been placed on him and that corrections officers were calling Plaintiff a "snitch" and "rat" because Plaintiff had complained about the food theft, Bradt failed to provide Plaintiff with any protection.  Amended Complaint ¶ 30.  Plaintiff further maintains Bradt violated Plaintiff's Fourteenth Amendment due process rights by appointing to preside over the Tier III disciplinary hearing a hearing officer who had previously been appointed to investigate Plaintiff's food theft complaints against the hearing officer's co-workers and friends.  *Id.* ¶ 29.

Plaintiff alleges that Defendant Gray investigated Plaintiff's grievances and claims prior to the assault, including a February 13, 2008 grievance, EL-984-08, concerning plots by officers and other inmates to harm Plaintiff, had information that Plaintiff had been labeled a "snitch" and "rat," and knew inmates so labeled were often assaulted such that Gray was aware of the need to protect Plaintiff from the threatened assault.  Amended Complaint ¶¶ 36-37.  According to Plaintiff, because Gray disliked Plaintiff for reporting the food theft, Gray was deliberately indifferent to the threats directed toward Plaintiff and then supported the self-harm Misbehavior Report to protect staff from culpability for the thefts.  *Id.* ¶ 38.

With regard to Defendant Elliott, Plaintiff maintains that while housed in SHU following the assault, Elliott twice physically assaulted Plaintiff by pricking Plaintiff with a needle or needle-like object, and that following the second assault, Plaintiff noticed a small prick mark on his hand from which blood issued when squeezed.  Amended

Complaint ¶¶ 64-66.  Plaintiff had to wait months for an HIV/AIDS test, the results of which were negative, but that Plaintiff suffered much stress while awaiting the test results.  *Id.* ¶ 69.

## **DISCUSSION**

### 1.     **Service of Amended Complaint**

Preliminarily, although Defendants argue in support of their Second Motion to Dismiss that the Amended Complaint was not timely served, Defendants' Memorandum at 2-6, the undersigned, in the December 23, 2014 R&R, recommended this same argument made by Defendants in support of the First Motion to Dismiss be denied, December 23, 2014 R&R at 12-13, and that recommendation was adopted by Judge Skretny.  January 14, 2015 Order.  Accordingly, that decision is now the law of the case and applies with equal force to the Second Motion to Dismiss.  *Rezzonico v. H&R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999) ("The law of the case doctrine is similar to the issue preclusion prong of *res judicata* in that it limits relitigation of an issue once it has been decided.").  Alternatively, although Plaintiff argued in opposition that the Amended Complaint was timely served, Plaintiff's Response at 4-6, Defendants, by failing in their Reply, filed February 20, 2015, to argue in further support of the argument have effectively conceded it.  *See Ceglia v. Zuckerberg*, 2013 WL 1208558, at * 20 (W.D.N.Y. Mar. 26, 2013) (citing cases), *report and recommendation adopted by* 2014 WL 1224574 (W.D.N.Y. Mar. 25, 2014), *aff'd*, 600 Fed Appx. 34 (2d Cir. Apr. 20, 2015).

Accordingly, Defendants' Second Motion to Dismiss should be DENIED insofar as Defendants challenge the service of the Amended Complaint as untimely.

2.    **Motion to Dismiss**

Defendants further argue in support of dismissal that Plaintiff has not stated a plausible claim against Defendants, asserting Plaintiff's claims against Bradt and Gray rely on *respondeat superior* without making the necessary showing of personal involvement, Defendant's Memorandum at 7-10, and that the injury Elliott allegedly inflicted on Plaintiff by the needle prick did not cause the requisite physical injury to support Plaintiff's claim for mental or emotional distress.  *Id.* at 10.   In opposition, Plaintiff asserts that the Amended Complaint alleges sufficient facts to state a claim against each Defendant, Plaintiff's Response at 6-8, including personal involvement in investigating Plaintiff's complaints by Bradt, *id.* at 8-9, and Gray, *id.* at 10-11, and that Plaintiff suffered the requisite physical harm to support an Eighth Amendment violation when Elliott used a needle to penetrate Plaintiff's skin.  *Id.* at 11-12.  In further support of dismissal, Defendants reiterate that Plaintiff has failed to show the requisite personal involvement of Defendants Bradt, Defendants' Reply at 2-4, and Gray, *id.*, at 4-5, and that administering a needle prick on two separate occasions is insufficient to satisfy the objective standard for an Eighth Amendment claim.  *Id.* at 5-7.

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).  The Supreme Court requires application of "a 'plausibility standard,'

which is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678).  "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on its face").  The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.  "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached, and any document upon which the complaint heavily relies." *ASARCO LLC v.*

*Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (quoting *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013)).  *See Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000) (considering the complaint to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," as well as "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit . . . .").  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which render the document 'integral' to the complaint."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

    In the instant case, Plaintiff, by attaching as exhibits to the original complaint numerous documents, including, *inter alia*, copies of letters sent and grievances filed by Plaintiff, which are not also attached as exhibits to the Amended Complaint and only generally referenced therein, has established that Plaintiff is, nevertheless, in possession of such documents.  Furthermore, because the numerous letters exchanged between Plaintiff and Defendants, Plaintiff's February 8, 2008 grievance, the allegedly false Misbehavior Report charging Plaintiff with self-harm, and the resulting investigations conducted by Defendants regarding the grievances and Misbehavior Report provide the basis for Plaintiff's claims, the court considers the documents Plaintiff attached as exhibits to his original complaint as incorporated by reference into the Amended Complaint, allowing the court to consider them in analyzing Defendant's Second Motion to Dismiss.  *Chambers*, 282 F.3d at 153; *Rothman*, 220 F.3d at 88-89.

### 3.      Personal Involvement

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, for which a valid claim requires the plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  Here, Plaintiff's claims include denial of due process in violation of the Fourteenth Amendment, and failure to protect and excessive force in violation of the Eighth Amendment.

It is basic that a defendant's personal involvement in the alleged constitutional deprivation is a prerequisite to liability in a § 1983 action.  *Spavone v. New York State Dept. of Correctional Services*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  A supervisor's liability in a § 1983 action "cannot rest on respondeat superior."  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citing cases)).  "To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violation."  *Id.* (citing *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995)).  "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."  *Id.* (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985), and citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting a § 1983 defendant may not be held liable for constitutional violations merely because he holds a position of high authority)).  Instead, the requisite personal involvement

"can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring."

*Id.* (quoting *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003)).

### 4.   Defendant Bradt

Plaintiff claims Defendant Bradt, as former Elmira Superintendent who supervised all DOCCS employees at the correctional facility, was aware of Plaintiff's grievance complaining corrections officers were calling Plaintiff a "snitch" and a "rat" for complaining about theft of food, and that a physical assault against him by other inmates was imminent, yet failed to appoint staff to properly investigate Plaintiff's complaints, failed to protect Plaintiff from the threatened assault and was deliberately indifferent to Plaintiff's situation.  Amended Complaint ¶¶ 27-28, 30. Plaintiff further maintains Bradt violated Plaintiff's Fourteenth Amendment due process rights by appointing to preside over the Tier III disciplinary hearing regarding the allegedly false Misbehavior Report charging Plaintiff with self-harm, a hearing officer who had previously been appointed to investigate Plaintiff's food theft complaints against the hearing officer's co-workers and friends.  *Id.* ¶ 29.

Defendants move to dismiss the claims against Bradt for lack of personal involvement, asserting Plaintiff's Eighth Amendment claim against Bradt is based on respondeat superior which is insufficient for liability under § 1983.  Defendants' Memorandum at 7-9.  In opposition, Plaintiff argues Bradt was obligated, upon learning of the threats to Plaintiff, to take steps to ensure Plaintiff's safety.  Plaintiff's Response

at 8-9.  Plaintiff further maintains that because 2,000 inmates are housed at Elmira, it

was not reasonable to expect Plaintiff to identify by name the inmates who assaulted

him.  *Id.* at 9.  In further support of dismissal, Defendants characterize Plaintiff's

allegations against Bradt as "conclusory statements," asserting that Bradt's mere receipt

of Plaintiff's letters complaining about threats and conditions of confinement which Bradt

forwarded and ordered investigations, is insufficient to hold Bradt liable for the alleged

constitutional deprivations.  Defendants' Reply at 2-3.  Defendants further maintain that

Plaintiff's admission in his responding papers that he did not know the identity of the

inmates who were planning to assault Plaintiff underscores the insufficient detail to state

a claim against Bradt for failing to protect Plaintiff from the assault.  *Id.* at 4.

To establish a constitutional violation under the Eighth Amendment, an inmate

must meet both an objective and subjective requirement.  *Jolly v. Coughlin*, 76 F.3d

468, 480 (2d Cir. 1996) (citing cases).  The objective requirement is met where the

alleged violation is "sufficiently serious" by objective standards.  *Farmer v. Brennan*, 511

U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  The

subjective prong requires the inmate allege facts which, if true, would establish a prison

official was deliberately indifferent to his health or safety.  *Farmer*, 511 U.S. at 837.  The

Eighth Amendment also "imposes a duty on prison officials 'to take reasonable

measures to guarantee the safety of inmates in their custody.'"  *Garcia v. Witkowski*,

988 F.Supp.2d 360, 361 (W.D.N.Y. 2013) (quoting *Hayes v. New York City Dep't of

Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer*, 511 U.S. at 832-33))).  "A failure-

to-protect claim requires a showing that prison officials acted with 'deliberate

indifference' to the inmate's safety."  *Id.* (citing *Morales v. New York State Dep't of Corr.*,

842 F.2d 27, 30 (2d Cir. 1988)).  A prison official acts with deliberate indifference toward

an inmate's safety only if the official, despite knowledge that the inmate faces a

substantial risk of serious harm, disregards that risk by failing to take reasonable

measures to abate it.  *Farmer*, 511 U.S. at 835-37.  *See Garcia*, 988 F.Supp.2d at 362

("in failure to protect cases, a prisoner normally proves actual knowledge of impending

harm by showing that he complained to prison officials about a specific harm to his

safety.").  Neither mere negligence nor a prison guard's mere failure to act reasonably is

enough to state an Eighth Amendment deliberate indifference claim.  *Garcia*, 988

F.Supp.2d at 362 (citing *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996)).  Instead, the

inmate must show "actual or imminent harm."  *Benjamin v. Fraser*, 343 F.3d 35, 41 n.

17 (2d Cir. 2003) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)), *overruled on

other grds.*, *Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009).

Insofar as Plaintiff claims Bradt, as the recipient of Plaintiff's letters complaining

about threats and conditions of confinement, failed to properly investigate such

complaints and is thus is responsible for the assault, Amended Complaint ¶¶ 28-28, 30,

mere receipt of a letter is insufficient to establish the requisite personal involvement for

§ 1983 liability; rather, personal involvement may be found were a supervisory official

receives and acts on or undertakes an investigation of the inmate's complaint or

grievance.  *Rivera v. Fischer*, 655 F.Supp.2d 235, 238 (W.D.N.Y. 2009).  Nor is the

forwarding of a letter to a subordinate for investigation and response sufficient to hold

the prison official personally involved in the alleged constitutional deprivation.  *Sealey v.

Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).  Significantly, Plaintiff fails to allege any facts

establishing that Bradt became personally involved in the investigation into the matters

raised by Plaintiff's letters of complaint.  *Rivera*, 655 F.Supp.2d at 238.  Furthermore,

not only has Plaintiff failed to allege, but the letters and grievances Plaintiff filed do not

reveal that Plaintiff ever asserted a physical attack was imminent such that Bradt cannot

be found to have known that Plaintiff was being threatened by certain inmates with

"actual or imminent harm."  *Benjamin*, 343 F.3d at 41 n. 17.  As such, Defendants'

Second Motion to Dismiss should be GRANTED at to the Eighth Amendment claim

against Bradt because Plaintiff has failed to plead facts which, liberally construed in

favor of Plaintiff, could plausibly establish the requisite personal involvement of Bradt in

the alleged Eighth Amendment violations.

     Nor does the Amended Complaint adequately allege a Fourteenth Amendment

due process violation against Bradt based on Bradt's appointing as the hearing officer

for the Tier III disciplinary hearing held on the Misbehavior Report falsely charging

Plaintiff with self-harm a DOCCS employee who had previously been directed to

investigate the food theft complaints Plaintiff made against the hearing officer's co-

workers and friends such that the hearing officer was biased against Plaintiff.  Amended

Complaint ¶ 29.  Defendants argue in support of summary judgment that Plaintiff fails to

allege Bradt's personal involvement in the investigation of the Misbehavior Report and

disciplinary hearing and thus fails to establish Bradt knew Plaintiff's due process rights

were being violated.  Defendants' Memorandum at 9.  Plaintiff does not offer any

argument in opposition to dismissal of this claim.

     "Prison disciplinary proceedings are not part of a criminal prosecution, and the

full panoply of rights due a defendant in such proceedings does not apply."  *Wolff v.*

*McDonnell*, 418 U.S. 539, 556 (1974).  "[R]egardless of state procedural guarantees,

the only process due an inmate is that minimal process guaranteed by the Constitution as outlined in *Wolff*." *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004).   As such, a violation of a state prison regulation during a prison disciplinary hearing does not give rise to a § 1983 due process claim. *Blouin v. Spitzer*, 356 F.3d 348, 363 (2d Cir. 2004) ("federal law, not state regulations, determined the procedures necessary to protect that liberty interest.").   Prison inmates nevertheless are "entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as . . . special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).   In particular, "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary action taken." *Sira*, 380 F.3d at 69.

Although Plaintiff does allege that he was denied at the Tier III disciplinary hearing a "fair and impartial hearing officer," *Sira*, 380 F.3d at 69, Plaintiff's Fourteenth Amendment due process claim should be dismissed because Plaintiff's 60-day confinement in SHU[3] did not constitute the requisite denial of a liberty interest within the meaning of *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding inmate does not suffer the deprivation of a liberty interest supporting a Fourteenth Amendment due process violation based on a prison disciplinary hearing unless the subsequent punishment imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.").   Here, Plaintiff does not allege the SHU conditions in which he

---

[3] Plaintiff, in connection with the guilty disposition on the Misbehavior Report, was sentenced to six months confinement in SHU, but served only 60 days.

was held upon being found guilty on the Misbehavior Report charging him with self-harm were any more extreme than generally encountered in SHU such that Plaintiff's 60-day confinement in SHU is too short to establish the requisite deprivation of a liberty interest.  *See Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) ("The longest confinement in normal SHU conditions that we have ruled was not shown to meet the *Sandin* standard was 101 days.").  Accordingly, Defendants' Second Motion to Dismiss should be GRANTED as to Plaintiff's Fourteenth Amendment due process claim against Bradt.

## 5.     Defendant Gray

Plaintiff alleges that because Defendant Gray investigated Plaintiff's grievances and claims prior to the assault, had information that Plaintiff had been labeled a "snitch" and "rat," and knew inmates so labeled were often assaulted, Gray was aware of the need to protect Plaintiff from the threatened assault, but because Gray disliked Plaintiff for reporting the food theft, Gray was deliberately indifferent to the threats directed toward Plaintiff and then supported the self-harm Misbehavior Report to protect staff from culpability for the thefts.  Amended Complaint ¶¶ 36-38.  Defendants argue in support of dismissal that Plaintiff fails to allege facts sufficient to establish Gray's personal involvement, such as that Plaintiff ever requested protection from Gray prior to the assault, that Gray knew an attack was imminent, or that Gray had any ability or authority to place Plaintiff in protective custody for an undefined harm.  Defendants' Memorandum at 9.  Nor does Plaintiff allege facts to establish Gray knew the identity of Plaintiff's attackers or their intent to attack Plaintiff, had the ability to prevent the assault, or even that Gray was at work when Plaintiff was assaulted.  *Id.* Defendants maintain

that Plaintiff essentially is alleging that Gray's investigation of Plaintiff's February 8,

2008 grievance somehow vested Gray with knowledge of and imputed wrongdoing for

failure to protect Plaintiff from the assault, which Defendants further maintain is too

attenuated to state a plausible Eighth Amendment claim based on a failure to protect.

*Id.* at 9-10.  Plaintiff argues in opposition that Gray knew an attack on Plaintiff was

imminent because Plaintiff filed multiple grievances asserting physical threats were

being made against him, and Plaintiff also told Gray "face-to-face" that some of the

DOCCS employees were stealing food.  Plaintiff's Response at 10.  Nevertheless,

according to Plaintiff, Gray ignored the threats because he wanted Plaintiff to be

assaulted as punishment for reporting the food thefts.  *Id.*  In further support of

dismissal, Defendants reiterate that Plaintiff fails to allege Gray denied any requests

from Plaintiff for protection, that Gray knew an attack on Plaintiff was imminent, that by

investigating one grievance, Gray became personally involved in protecting Plaintiff

from the undefined future assault, or that Gray had any ability to prevent the assault on

Plaintiff.  Defendants' Reply at 4-5.  Defendants further maintain that insofar as Plaintiff

claims that Gray's failure to protect Plaintiff was motivated by Gray's desire to punish

Plaintiff for reporting that other DOCCS employees were stealing food could be

construed as retaliation, Plaintiff fails to allege the requisite causal connection between

Gray's investigation of the February 8, 2008 grievance and the opening of his cell door

on February 28, 2008, just prior to the attack.  *Id.* at 5.

A plain reading of the Amended Complaint establishes it fails to allege sufficient

personal involvement by Gray in any Eighth Amendment failure to protect claim, and

also fails to allege the requisite causal connection to state a claim for retaliation.  In

particular, although Plaintiff alleges that Gray, despite being advised by Plaintiff that unidentified inmates were threatening to attack him, yet failed to take steps to protect the inmate from a physical attack, an Eighth Amendment claim based on an alleged failure to protect requires not mere conclusory statements that a defendant was aware of threats to an inmate's personal safety, but that the inmate show "actual or imminent harm." *Benjamin*, 343 F.3d at 41 n. 17.  *See* Discussion, *supra*, at 13-14.  Here, Plaintiff failed to allege, and the February 8, 2008 grievance Plaintiff filed concerning plots involving physical threats toward Plaintiff, and which Plaintiff alleges Gray investigated, failed to reveal that Plaintiff ever asserted a physical attack was imminent such that Gray cannot be found to have known that Plaintiff was being threatened by certain inmates with "actual or imminent harm." *Benjamin*, 343 F.3d at 41 n 17.  Nor do any of the other letters and grievances Plaintiff attached as exhibits to the original complaint show Plaintiff was complaining of any threat of imminent harm or by any specific inmate or correctional facility staff member.  Rather, most of the documents filed as exhibits are dated after the February 28, 2008 assault, and the few that pre-date the assault do not mention any specific threat.  Accordingly, Defendants' Second Motion to Dismiss should be GRANTED as to Plaintiff's claim alleging an Eighth Amendment violation against Gray for failing to protect Plaintiff from the February 28, 2008 assault.

Furthermore, insofar as the Amended Complaint can be construed as alleging Gray's failure to protect Plaintiff was motivated by Gray's desire to punish Plaintiff for reporting that other DOCCS employees were stealing food could be construed as retaliation, Plaintiff fails to allege the requisite causal connection between Gray's investigation of the February 8, 2008 grievance and the opening of his cell door on

February 28, 2008, just prior to the attack.  Defendants' Second Motion to Dismiss should thus be GRANTED as to any retaliation claim against Gray.

## 6.     Defendant Elliott

Plaintiff claims that while housed in SHU following the assault, Elliott, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment, twice physically assaulted Plaintiff by pricking Plaintiff with a needle or needle-like object, and that Plaintiff suffered much stress during the two-month period Plaintiff had to wait for the results of an HIV/AIDS test.  Amended Complaint ¶¶ 64-66, 69.  Defendants, in support of dismissal of this claim, rely on the Prisoner's Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e[e], providing as relevant that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing or physical injury . . . ."  Defendants' Memorandum at 10.  As such, Defendants maintain that because Plaintiff is suing for mental or emotional harm unrelated to a physical injury, the claim must be dismissed.  _Id._  In opposition to dismissal, Plaintiff maintains that when Elliott pricked him twice with a needle, breaking his skin, he suffered the requisite physical injury to state a claim for mental suffering under the PLRA.  Plaintiff's Response at 11-12.  In further support of dismissal, Defendants maintain that the needle pricks of which Plaintiff complains posed no more than a '_de minimis_ injury' which is insufficient to support an Eighth Amendment claim.  Defendants' Reply at 6.

It is settled that not "every malevolent touch by a prison guard gives rise to a federal cause of action."  _Hudson v. McMillian_, 503 U.S. 1, 9-10 (2d Cir. 1992) (citing _Johnson v. Glick_, 481 F.2d 1028, 1033 (2d Cir. 1973)).  "The Eighth Amendment's

prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).  Nevertheless, the deliberate stabbing of an inmate with a needle has been held sufficient to allege an Eighth Amendment violation.  *See*, *e.g.*, *Wills v. Haines*, 20 Fed.Appx. 573, 573-74 (8th Cir. Sept. 26, 2001) (allegation that prison nurse deliberately stabbed prison inmate with a needle because she was angry with him sufficiently stated Eighth Amendment claim).  Significantly, unlike the *de minimis* injury resulting from a push or a shove, the resulting injury from a needle prick can subject the injured inmate to such serious and uncurable conditions as hepatitis or HIV, as is evident from the fact that Plaintiff was given an HIV/AIDS test following the incident.  Furthermore, because Plaintiff's claim against Elliott as alleged in Plaintiff's 12th claim in the original complaint is essentially identical to Plaintiff's ninth claim alleged against Elliott in the Amended Complaint, Judge Telesca's determination that "[t]o the extent that Claim #12 [of the original complaint] describes the alleged needle assault on plaintiff, it states an excessive force claim and may proceed against defendant Elliott,"  March 7, 2012 Screening Order at 21-22, is now the law of the case. *See* Discussion, *supra*, at 7.

Accordingly, Defendants' Second Motion to Dismiss should be DENIED as to the Eighth Amendment claim against Elliott.

## 7.    Dismissal with Prejudice

Although not discussed by the parties, the Amended Complaint should be dismissed with prejudice and without leave to file a further amended complaint with

regard to Defendants Bradt and Gray. In particular, "a *pro se* complaint 'should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (bracketed material in original)). Nevertheless, dismissal may be with prejudice and without leave to amend where "'the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.'" *Id.* (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)). Here, the factual basis alleged in support of the claims asserted in the Amended Complaint against Defendants Bradt and Gray, along with Plaintiff's arguments made in opposition to Defendants' Second Motion to Dismiss seeking the dismissal of such claims, demonstrates the absence of any possibility that Plaintiff, if permitted to file a further amended complaint, could state a plausible claim for relief against any of these Defendants. Accordingly, the claims against Defendants Bradt and Gray should be DISMISSED with prejudice.

## <u>CONCLUSION</u>

Defendants' Second Motion to Dismiss (Doc. No. 23), should be GRANTED in part and DENIED in part; the Amended Complaint should be DISMISSED with prejudice as against Defendants Bradt, and Gray, but should not be dismissed against Defendant Elliott.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       June 30, 2015
                    Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and the attorneys for the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      June _30_, 2015
            Buffalo, New York